Ruffin, C. J.
 

 In the year 1850, the defendant, John Ty
 
 *171
 
 son, contracted to sell to Angus McDonald a lot in the town of Carthage, having on it a tavern and store-housej at the price of $2,000: whereof $500 was paid down, and for the residue the vendee gave his several bonds for $214, 28 1-2 each, payable on the 1st of January, 1831, 1832, 1833, 1834, 1835, 1836 and 1837, The title was to be made when the purchase money was fully paid; but McDonald was let into possession immediately, and he made some improvements, and continued in possession until his death, which happened about the middle of the year 1839. He made sundry payments towards the discharge of the purchase money; but, for several years before his death, a balance was due thereon, as reported, of $796,93 for principal and interest, due on judgments rendered on some of the bonds. In the beginning of 1839 the vendor brought an ejectment for the premises against McDonald, and the same was pending at his death. McDonald died intestate, leaving three children, who were his heirs, and very young at his death, and no guardian was appointed for them : nor was administration taken of his estate for several years. Upon his death the defendant, John Tyson, abandoned his ejectment, and took immediate possession of the premises, claiming them absolutely, and sometimes letting them or parts of them to other persons, and at other times they were unoccupied. In the answer of the defendant, he stated, that he believed McDonald to be entirely insolvent, and that he had no estate liable for the balance of the purchase money: and that he was advised, “ that the law furnished no means for procuring payment of the sum remaining due, nor for having the contract of sale judicially annulled, and therefore that he had a right to annul the contract, and take possession of the premises and keep it.” He accordingly treated the premises as his own up to the beginning of the year 1844, and then he conveyed-them to
 
 *172
 
 his son Thomas Tyson, the other defendant, in fee, as an advancement, and the son then entered, and sold and removed some offices, which McDonald had built, of the value of $160, and in 1845 erected on the premises a store at the cost of $490, and thereafter occupied the premises up •to the bringing of this suit in August 1846, and has continued to occupy them ever since.
 

 The bill is filed by the three infant children of McDonald, and prays for specific performance of the contract, and that an account may be taken of the principal and interest due on account of the purchase money, and also that a proper allowance may be made to the plaintiffs for waste committed by either of the defendants, and such rents as either of them may have received, and such reasonable sums as the defendants ought to pay during their occupation of the premises, and that, upon payment of any balance then remaining, the defendants shall convey under the direction of the master.
 

 Upon the hearing there was a decree declaring the plaintiffs entitled to specific performance : and it was referred to •the Clerk to take an account of the payments on account •of the purchase money, so as to ascertain the balance therefor, if any: and also an account of the rents and profits of .the premises, which the defendants or either of them received, or without default might have received : and also enquire how long the defendants or either of them occupied the premises, and set a value on the premises by way of a reasonable annual rent during such occupation, and also an account of any waste committed or caused by either of the defendants during that period, and to charge the same against the said purchase money: and the Clerk was directed also to enquire the value of any necessary repairs •and proper permanent improvements made on the premis-as by either of the defendants, and deduct the value there
 
 *173
 
 of, in the first place from the sums allowed for tire rents, profits, and waste.
 

 The master found the value of the houses removed in 1844 to be $160, and he deducted that sum, as of that date from the balance of the purchase money: and he found the value of houses built and improvements made in 1845 to be $490, and he added that sum as of that date to the balance of the purchase money then due. He found, that the sum of $95 00 was a reasonable annual rent for the premises during the whole period, from the time John Tyson took possession in 1839, to the taking of the account in January 1850, and charged that sum to the defendants in the account annually, although, for parts of the lime between 1S39 and 1844, the defendant John Tyson did not receive an}r rent from others, nor actually occupied the premises himself.
 

 The principal questions on the report are raised by exceptions on the part of the defendants, that a higher rent has been allowed than the premises were worth, and, more particularly, that the defendants ought to be charged only-such sums as they actually received for rent, or as the premises were worth to them, while occupied by them, and not for those periods during which they were not let nor occupied, nor what the premises might have brought upon lettings to others. Those positions are taken in reference to the rules, supposed to regulate the accountability of mortgagees in possession. But even a mortgagee, who takes possession, with a view of applying the profits to the reduction of the debt, or to hasten the mortgagors into active diligence to pay it by other means, is chargeable -with an occupier’s rent upon a customary lease to one for actual occupation. When the mortgagee does not occupy, he is, obviously, only chargeable for the rent as actually received, or for such as he might have received from a responsi
 
 *174
 
 ble person, to whom he refused to let: because, it is said, he is not bound to leave his own business to locfk out for tenants, nor take the responsibility of fixing the proper ¡rent, but that it is the province of the mortgagor to bring a fit tenant, so that the premises may not be idle. That might, probably, be • varied by circumstances. But it is not necessary to pursue the enquiry, as between mortgagor and mortagee, where the latter
 
 bona fide
 
 enters into possession for either of the legitimate purposes before mentioned, as it is conceived, that the present is a case of quite a different character. The vendor, indeed, retained the title as a security for the purchase money, and may, therefore, in some degree, be likened to a mortgagee. But his entry was, certainly, not in that character. He did not go in to receive the profits towards his debt. On the contrary, he admits in the answer, that he took possession as absolute owner, because, as he says, his vendee had died, leaving a part of the purchase money unpaid, and leaving infant heirs without the means of paying it. As he did notenter or claim as mortgagee, he is not entitled to the privileges of a mortgagee. His entry was in avoidance of his sale, a.nd so was wrongful in the view of the Court of Equity,in which he, as vendor, is regarded as a trustee for the vendee, except only in respect of the estate being a security for the price. But if it would be tortious as against the vendee, under ordinary circumstances, it was so in the highest degree, after the payment of nearly two-thirds of the purchase money, as against infants in straitened circumstances, • incapable, themselves, and without friends, who would undertake to investigate the state of the accounts, and assert their rights. The defendant says he was advised, he could rescind the sale. But tha.t is hardly possible; and it is the more incredible, when it is seen what reaso-n he gives for it: which is, that his- vendee left
 
 *175
 
 no means of paying the residue of the price. Jf he was so advised, it was clearly wrong. For, in the first place,' by filing a bill, the balance of the price would have been duly ascertained, and then raised out of the premises, if there was nothing else to be reached. Besides, if he had the right to rescind the sale, it must have been done entirely, or not at all; and then he would have been bound to refund the part of the purchase money he had received. But nothing of that sort was done or offered; and, instead of the fair and legal course of filing a bill, the vendor, upon the mere force of his legal title, and taking advantage of the incapacity and helplessness of the vendee’s children, injuriously denied any right in them, and claimed a perfect title in himself, as well in equity as at law, and as such entered and, in all respects, acted as owner", by pulling down and selling houses, and building others, and, finally, by conveying in fee. One thus abusing the. power given by the legal title, and denying the rights of infants, for whom he was trustee, cannot be looked on, in a Court of Equity, in any light but that of a
 
 tort feasor,
 
 by reason of a wilful' and gross breach of trust; and, therefore, he is justly chargeable with the highest occupier’s rent from the moment of the breach of trust He is liable, not only for what he made out of the premises, but for what the infants may have lost, which is, whatever rent a guardian might have let the premises for, if the defendant had not seized them. Therefore, the defendant’s third, eighth and ninth exceptions are overruled.
 

 The defendants also except, because the rents are deducted from the purchase money at the end of each year, and because the value of the houses removed and sold is deducted from the purchase money, so as to stop so much interest on the bonds given for the purchase money; and also, because the value of the improvements is not deduct
 
 *176
 
 ed from the rents, and because interest is not allowed thereon. But neither of those exceptions — being the 4th, 5th, 6th, 7th and 10th, is sustainable. The rents, and the price got for the houses, make so much in the hands of the defendant, which the plaintiffs are entitled to consider in the nature of payments, and thus reduce the amount of the purchase money, bearing interest. The value of the improvements is, in effect, deducted from the profits, and interest in the meanwhile allowed on it: for, it is added, as an item in account, to the purchase money, and thus increases the sum bearing interest, until extinguished by the accruing rents.
 

 The defendants must pay the costs of the cause ; for, although as mortgagees, to whom a balance is due, they would be entitled to their costs out of the premises, yet they are made amenable here, not as mortgagees, but as trustees committing a breach of trust, by denying the title of the
 
 cestui que trust,
 
 and setting up an absolute one in themselves.
 

 Per Curiam. Decree accordingly.